IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  01-cv-01917-REB-MJW

DENNIS MICHAEL BLAY,

Plaintiff,

v.

JOHN REILLY, Head Supervisor JVP Industries,
RICHARD GRAHAM, Supervisor JVP, and
CHARLIE PELLITIER, Supervisor JVP,

Defendants.

---

## RECOMMENDATION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 195)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by District Judge Walker D. Miller on January 8, 2002.  The case was

subsequently reassigned by Judge Miller to Judge Robert E. Blackburn on March 12,

2002 (Docket No. 27).

The only plaintiff remaining in this case is pro se incarcerated plaintiff Dennis

Michael Blay.  Pursuant to an Order issued by Senior Judge Zita L. Weinshienk on

December 10, 2001 (Docket No. 12), the only defendants remaining in this case are

John Reilly, Richard Graham, and Charlie Pelletier, and the only two claims remaining

are Claims III and IV of the Prisoner's Civil Rights Complaint, brought pursuant to 42

U.S.C. § 1983, which was filed on September 28, 2001 (Docket No. 4).  All other claims

were dismissed by Judge Weinshienk as legally frivolous pursuant to 28 U.S.C. §

1915(e)(2)(b).  On December 8, 2003, Judge Blackburn denied the plaintiff's motion to

amend his Complaint.  (Docket No. 70).

In his Prisoner Complaint, plaintiff asserts the following background as it

pertains to the two remaining claims.  He was hired by defendant Graham in November

1998 to work in the State Correctional Industries, also known as Juniper Valley

Products, Graphics Design Division, in the Limon Correctional Facility, as a sign prep

man.  (Compl. at 3a).  "[T]he building where Graphics Design was located was built

specifically for Graphics Design."  (Compl. at 3a).  In July 1999, plaintiff was made a

"team trainer," which entailed "train[ing] inmates to prepare signs for letterings.  this

[sic] process included using power tools, painting, sanding and etc."  (Compl. at 3a).  In

addition, plaintiff was "in the position of being a supervisor to these inmates . . . ."

(Compl. at 3a).

As Claim III, plaintiff asserts:

John Reilly, Robert Graham, Charlie Pelletier, without regard created an
environment with deliberate indifference to the health and safety of all
personnel including staff, by the use of tools and equipment that was not
designed or manufactured for the purposes that defendants imposed
upon Plaintiffs and that defendants took no action to prevent but rather
encouraged the misuse of these same tools and equipment to cut metal
with wood working tools.

Defendants also failed to provide adequate ventilation in closed work
areas when Plaintiffs were using volatile and dangerous chemicals and
there was no dust control ventilation.  these [sic] defendants were
controlled by the shops [sic] outward appearance and security concerns,
rather than the shops [sic] internal maintenance and safety, which is
reckless disregard in failing to act in the best interests of the workers.
This behavior is egregious when these defendants failed to address these

physical dangers which were apparent, plus the complaints of Plaintiffs regarding the same. Violating the 8th Amendment and internal policies, plus unknown ACA Standards, Health and Safety codes of the state.

Supporting Facts: Plaintiffs used tools and equipment on numerous occasions to cut metal to finish urgent jobs by request of defendants. Plaintiff Blay was hurt on the job because of defendants [sic] deliberate indifference to Plaintiffs [sic] concerns of being injured. Plaintiffs asked on many occasions for the proper tools or equipment to do the work requested of them. Each time Plaintiffs [sic] requests were denied as being a security risk. Plaintiff should have never been placed in that situation, because Juniper Valley Products, ie: Correctional Industries, does have and operates a metal fabricating shop for this specific reason. Plaintiffs on many occasions specifically requested ventilation, because Plaintiffs used dangerous and volatile chemicals everyday [sic] to do the jobs ordered. Plaintiffs [sic] requests were either ignored or denied as being too expensive or not cost effective.

(Compl. at 3d and 4). As Claim IV, plaintiff asserts:

It is common occurrence and practice for defendants John Reilly, Robert Graham, and Charlie Pelletier to order and encourage inmate workers to work in different work stations using tools and equipment without being trained or warned of possible dangers associated with the use of these tools, which is capable of removing or causing sever [sic] bodily damage or death by accident or otherwise. Violating DOC AR 300-09, Tool Control, Health and Safety codes and the 8th Amendment.

SUPPORTING FACTS: There were many times in which both Plaintiffs were asked to do work in different areas of Graphics Design. During these time [sic] Plaintiffs were never advised of any possible dangers or trained with any of these unfamiliar tools and equipment. Defendants by virtue expected other inmate "Team Trainers" to do this work for them thus relieving them of the responsibility. Plaintiffs believe this is **gross negligence** on the part of the defendants in this case.

(Compl. at 3d) (emphasis added). Plaintiff seeks substantial monetary damages.

(Compl. at 6).

On May 10, 2004, this court issued a report and recommendation in which it was

recommended that defendants' motion for summary judgment (Docket No. 76) be

granted.  In sum, this court found that the record did not support a finding that there was a genuine issue of material fact that the defendants were both aware of and disregarded an excessive and serious risk to the plaintiff's health and safety.  (Docket No. 110).  On July 19, 2004, Judge Blackburn approved and adopted that recommendation, and the plaintiff's claims were dismissed with prejudice.  (Docket Nos. 117 and 118).

The Tenth Circuit Court of Appeals affirmed the dismissal on the grounds that plaintiff had failed to plead adequately his compliance with the exhaustion requirements of the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  In doing so, the court relied on its precedent in Steele v. Federal Bur. of Prisons, 355 F.3d 1204 (10th Cir. 2003), which was subsequently abrogated by the United States Supreme Court in Jones v. Bock, 127 S. Ct. 910 (2007).  The case was remanded with directions to dismiss the Complaint without prejudice.  (Docket Nos. 151 and 152).

On February 20, 2007, the United States Supreme Court granted certiorari, vacated the Tenth Circuit's judgment, and remanded the case for further consideration in light of its ruling in Jones v. Bock.  (Docket No. 176).  The Tenth Circuit recalled the mandate issued on November 21, 2007, and vacated the judgment filed on October 28, 2005.  (Docket No. 176).  On August 15, 2007, the court  proceeded to the merits of the plaintiff's appeal and agreed with plaintiff that the existence of genuine issues of material fact precluded summary judgment.  The court  reversed the district court's grant of summary judgment and remanded for further proceedings.  (Docket No. 182).  In a footnote, the court stated, "we intend no comment on the merit of any possible

future summary judgment motion based on a failure to exhaust administrative remedies or any other not previously pursued affirmative defense." (Docket No. 182 at 11 n.2).

The undersigned then held a telephone status conference on January 3, 2008. (Docket No. 193). Defense counsel advised that he intended to file a motion to dismiss for failure to exhaust administrative remedies. A Scheduling Conference was set for January 31, 2008, at 8:30 a.m. (Docket No. 193). That conference, however, was subsequently vacated following defendants' filing of a Motion for Summary Judgment (Docket No. 195), which is now before the court for a report and recommendation. Plaintiff did not file a response to the motion. It is evident that plaintiff received a copy of the motion because he attached a copy of it to a non-responsive document he subsequently filed which is entitled "AFFIDAVIT OF NON CORPORATE STATUS" (Docket No. 203). After the summary judgment motion was filed, plaintiff also filed two other non-responsive documents entitled "CONDITIONAL ACCEPTANCE FOR VALUE (CAPV)-REQUEST FOR PROOF OF CLAIM AS TO THE STATUS OF MONETARY CONDITIONS WHEREIN THE STATE OF COLORADO TO PAY DEBTS AT LAW. JURISDICTION AND OTHER MATTER, CONSTITUTING AGREEMENT" (Docket No. 202) and 'NOTICE OF FAULT AND OPPROTUNITY [sic] TO CURE AND CONTEST ACCEPTANCE" (Docket No. 204).

The court has considered the motion, applicable Federal Rules of Civil Procedure and case law, and the court's file. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion for summary judgment be granted.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "**Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried**. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001) (emphasis added), aff'd, 328 F.3d 1267 (10th Cir. 2003). "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250 (1986)).

Since plaintiff is not an attorney, his Complaint has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

The PLRA, *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003), cert. denied, 540 U.S. 1118 (2004).  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)).  The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement."  Booth, 532 U.S. at 741, n.6.  "In *Booth*, the Supreme Court explained

that one of the purposes of the exhaustion requirement is to force an inmate to go

through the administrative process which in turn might afford prison officials the

opportunity to take some corrective action that would preclude litigation." Beaudry, 331

F.3d at 1167.

"[T]he failure to exhaust is an affirmative defense under the PLRA, and . . .

inmates are not required to specially plead or demonstrate exhaustion in their

complaints." Jones v. Bock, 127 S. Ct. at 921. As an affirmative defense, exhaustion

must be raised and proven by the defendants. Roberts v. Barreras, 484 F.3d 1236,

1241 (10th Cir. 2007).

Here, in their very thorough, well-documented motion for summary judgment,

defendants raise the affirmative defense of failure to exhaust administrative remedies.

Defendants document the following through exhibits and an Affidavit attached to their

motion. First, plaintiff is and was at the time of the events at issue a prisoner within the

meaning of the PLRA (see Docket No. 196-2-4) and thus was required to exhaust his

administrative remedies prior to commencing this action. Second, the Colorado

Department of Corrections ("CDOC") had at the time of the events in question (and still

has) an administrative grievance process set forth in its regulations. See CDOC

Administrative Regulation 850-4; Docket No. 196-6-10). Under that process, CDOC

prisoners who want to grieve prison conditions must do so by filing a completed written

grievance form, no later than thirty calendar days from the date they knew or should

have known the facts giving rise to the grievance. Third, plaintiff did not file a

grievance with respect to his two claims remaining in this action. According to the

Affidavit of Thomas E. Kolle (the CDOC Offender Records Administrator since 1998 and as such the DOC's custodian of records), none of the grievances filed by the plaintiff from November 1998 through May 2003 were about the presence of chemical fumes or of any ventilation problems in the Graphics Design Shop or about the lack of training or warning by the Graphic Design Shop on the proper use of tools. (Docket No. 196-5 196-11, 196-12). The only grievance plaintiff filed which mentioned the Graphic Design Shop, which was initiated on May 31, 2001, did not concern the claims here but instead concerned the circumstances of his termination from his employment in the shop. (Docket No. 196-5, 196-11, 196-12). Attached to Mr. Kolle's Affidavit are copies of all grievances plaintiff filed between November 1998 and May 2003, which show that plaintiff did not exhaust his administrative remedies with respect to his claims brought here. (Docket No. 196-11, 196-12).

Inasmuch as defendants have filed a properly-supported summary judgment motion, plaintiff cannot merely rest on the allegations contained in his Complaint and must instead respond with specific facts showing the existence of a genuine factual issue to be tried. <u>Southway</u>, 149 F. Supp.2d at 1273. Plaintiff, however, has not filed any opposition to the defendants' motion and thus has not controverted the defendants' documented affirmative defense that plaintiff has failed to exhaust. There is thus no genuine issue of material fact concerning plaintiff's failure to exhaust his available administrative remedies, which is required by the PLRA before the action is commenced, and it is thus

**RECOMMENDED** that the Defendants' Motion for Summary Judgment, which

was filed on January 28, 2008 (Docket No. 195), be **granted**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: March 27, 2008          s/ Michael J. Watanabe
       Denver, Colorado          Michael J. Watanabe
                        United States Magistrate Judge